EDITH KEAIRNES MCINTOSH, Appellee, v. MARY MCINTOSH et al., Appellants.

No. 39891.

JANUARY 13, 1931.

*H. L. Robertson* and *Roy Havens, pro se,* appellants.

*C. W. Kellogg,* for appellee.

DE GRAFF, J.—This is an action in equity, in which the petition of plaintiff (appellee) seeks to offset mutual judgments, as recited in the foregoing statement. The primary issue here concerns itself with the filed answer of the defendant Robertson & Havens, and involves the question whether, under the facts, a duly noticed attorney's lien is terminated in the offsetting of one judgment against the other. The facts in this particular, briefly stated, are as follows:

On December 13, 1923, the defendant Mary McIntosh obtained a judgment against Edith Keairnes (McIntosh) in the sum of $4,000, with interest and costs, for the alienation of her (Mary McIntosh's) husband's affections. The instant defendant-appellants H. L. Robertson and Roy Havens appeared for the said Mary McIntosh in the alienation suit, as attorneys, and within a few days after said judgment was entered, they perfected an attorney's lien in the sum of $2,000, by entering said lien on the judgment docket opposite the entry of the judgment. (Section 10924, Code, 1927.)

On the 18th day of November, 1925, the appellee Edith Keairnes McIntosh obtained a judgment against the said Mary McIntosh in the sum of $4,745.25 and costs on two promissory notes which were purported to be due and owing by the said Mary McIntosh to Edith Keairnes McIntosh, appellee herein.

The action in the instant case, commenced by Edith Keairnes McIntosh, is to offset *pro tanto* her judgment ($4,745.25) against the Mary McIntosh judgment ($4,000) heretofore mentioned. Scott P. McIntosh, the erstwhile husband of Mary, but the husband of Edith when the instant suit was commenced, was the primary factor in the alienation suit and the primary cause of the judgment therein obtained by Mary McIntosh against Edith Keairnes.

The plaintiff herein, Edith Keairnes McIntosh, alleged in her petition that her judgment ($4,745.25) was predicated on an indebtedness that arose long prior to the indebtedness which was evidenced in the judgment obtained by Mary McIntosh against Edith Keairnes (McIntosh), and that the said attorney's lien was and is junior and inferior to the instant plaintiff's said claim and judgment. The plaintiff's prayer in the instant petition is:

"That an order be made herein, and that judgment be entered offsetting the said judgment of this plaintiff against the said

judgment of the defendant Mary McIntosh, and that the said judgment of Mary McIntosh against Edith Keairnes (McIntosh) be settled, satisfied and held for naught, and credited on the said judgment of Edith Keairnes McIntosh against Mary McIntosh and for all equitable relief and for costs.''

The defendants (appellants) H. L. Robertson and Roy Havens filed an answer in two counts. In the first count it is alleged, *inter alia,* that fraud and conclusion exist between the appellee Edith and the said Mary McIntosh, with the specific intent to cheat and defraud the defendant firm, Robertson & Havens, out of their attorney fees. The second count of the answer alleges the perfecting of their attorney's lien on the judgment entered for Mary McIntosh, and further states that the said Mary McIntosh and the appellee herein, for the purpose of cheating and defrauding the defendant law firm out of its attorney fees and lien upon said judgment ($4,000), procured the said judgment ($4,745.25) of the appellee Edith Keairnes McIntosh against Mary McIntosh, and further alleges that the two promissory notes upon which said judgment was predicated were executed and delivered by the said Mary McIntosh to the appellee Edith after the attorney's lien was filed. In brief, the attorneys defendant allege and state, in effect, that the notes in question were fictitious. In the prayer of the answer filed by the said attorneys defendant, it is asked that a valid lien for the amount of attorney fees in the sum of $2,000 be established and that the judgment returned for the appellee herein against Mary McIntosh be declared null and void as to the attorneys defendant.

In an amendment to the answer, the defendant Robertson & Havens set out the written contract of employment between the law firm and Mary McIntosh, and plead an equitable estoppel.

Appellee in her reply denies each and every affirmative allegation set forth in the answer of said defendant.

Briefly summarized, the primary issues are:

1. Was there a valid indebtedness owed by Mary to Edith at the time of the commencement of the alienation suit by Mary McIntosh against Edith Keairnes (McIntosh) which resulted in a judgment ($4,000) in favor of Mary McIntosh?

2. Did the appellee, under the evidence, estop herself by her act, statements, and conduct from offsetting her judgment as

against the claim of an attorney's lien filed by the appellant Robertson & Havens?

We first turn to the fact question whether a valid indebtedness was owed by Mary McIntosh to Edith Keairnes (McIntosh) at the time of the commencement of the suit by Mary against Edith. Edith testified that there was. Mary testified that there was. The dates of the notes in question from Mary to Edith are shown by this record. The $1,800 note was dated May 26, 1919, and was due May 26, 1922. It was signed by Mary McIntosh and S. P. McIntosh, her husband, and was payable to Edith Keairnes. This note was secured by a mortgage of the same date on Lots 6 and 7 in Block 66, Town of Dunlap, Iowa. The record shows an assignment of this mortgage, dated June 24, 1922, to Fred W. Curtis; and on November 30, 1922, Curtis assigned the note and mortgage to one M. Swartz. Edith explains this transaction by stating in her testimony that she acted upon the advice of Mr. Fred W. Curtis, who was her cousin and her banker. She says that he (Curtis) told her "there was going to be trouble, and he advised me to assign the mortgage to him. Nothing was paid to anyone for that assignment." Edith further testified that she did not deliver the note and mortgage to Curtis. (Curtis was deceased at the time of the instant trial.) It is also shown that Curtis, with the thought of protecting Edith, assigned the mortgage to Swartz, and the assignment was recorded by Swartz. The note and mortgage, however, were not delivered to Swartz. Edith further testified that no consideration of any kind passed between Swartz and her with regard to this transaction of assigning the mortgage.

The $1,500 note was in Edith's handwriting, and bore the date June 3, 1920. Mary McIntosh, called by the defendants, testified that she trusted implicitly her husband, S. P. McIntosh, at that time. She further testified:

"I borrowed some money of Edith Keairnes in a transaction. I think that was in 1919 that I borrowed $1,500 from her. The note was signed in my home, and she gave me the money in cash. I gave that money to S. P. McIntosh. He always did the business. * * * If there was any papers signed (f)or borrowed money, I put my name on it, and that is about all I know. * * * These two things I know, because it was put in my name. The mortgage was on that place. The place was in my name."

The deed was recorded, and was a deed from Mary to her husband, Scott, conveying Lots 6 and 7 of Block 66 in Dunlap, Iowa, with general covenants of warranty, except two mortgages, one for $2,000 and one for $1,800, with accrued interest and back taxes, and stating that the grantor is not to be held for payment of any of these items. Mary states that she has no recollection about that deed; but Scott testified that he remembered taking a deed from his wife Mary, covering the land heretofore mentioned. This deed was executed before the marriage of Scott McIntosh to Edith Keairnes, but he could not say whether the suit had been commenced at that time by Mary McIntosh against Edith Keairnes for damages for alienating his affections from Mary. After he received the title to the lot in question from Mary, he gave a note for money borrowed from one L. K. Moore, and secured same by a mortgage on the lot in question. That mortgage was foreclosed, and by reason of the foreclosure sale, Mrs. G. M. Curtis (wife of the banker) eventually got title. Later, Mrs. Curtis conveyed the lot to Julia Keairnes, the mother of Edith. Subsequently, Edith purchased the property from her mother, Julia.

On the record before us, we hold, as did the trial court, that the judgment held by plaintiff Edith Keairnes McIntosh "was not the result or product of collusion and fraud, as claimed by the defendants Robertson & Havens." At this point it is apparent that this court is not in a position to give the appellant Robertson & Havens their prayed affirmative relief. The claim asserted through the attorney's lien has not been established, liquidated, or adjudicated. It may further be observed that in this case we are dealing with mutual judgments, and not with mutual executions. See Section 11740, Code, 1927; *Watson v. Smith*, 63 Iowa 228; *Gallaher v. Pendleton*, 55 Iowa 142.

In *Hubbard v. Ellithorpe*, 135 Iowa 259, the opinion states, on page 261:

"It is true, the statute [now Section 10924, Code, 1927] does not give an attorney a lien on the judgment itself, but provides only that he may have a lien upon money in the hands of an adverse party; but it does provide that the notice of a claim to the money in the hands of the adverse party shall be given by the memorandum note on the judgment or combination docket. The filing of this notice is sufficient to protect the attorney against

payment of the judgment by the party against whom it is rendered, and, if the judgment debtor pays the judgment notwithstanding the notice, he does so at his own peril; but we know of no sound reason why the judgment debtor may not pay the money into the hands of the clerk conditionally,—that is, he may deposit it with the clerk, making the clerk his agent for the purpose of protecting him against the attorney's lien, and enter into an arrangement with the clerk whereby the fee due the attorney may be turned over to him when the amount to which he is entitled is determined * * *.''

The legislature of North Dakota has adopted the Iowa statute governing attorney's liens. See *Jacobsen v. Miller*, 50 N. D. 828 (198 N. W. 349, 34 A. L. R. 323 [Annotation]).

The facts in *DeLaval Separator Co. v. Sharpless*, 134 Iowa 28, disclose that Sharpless obtained a judgment against the plaintiff on a replevin bond. At the time the judgment was recovered, Sharpless was indebted to the plaintiff for the purchase price of cream separators. The defendants Harl & Tinley had an attorney's lien on the judgment in favor of Sharpless for services in recovering the judgment, and took an assignment thereof before the appeal to this court, which resulted in an affirmance. The assignment was in payment of services already rendered and to be rendered in the case. The plaintiff in that case, who was a judgment debtor, brought an action in equity to restrain the enforcement of the judgment by Sharpless and by Harl & Tinley, on the ground that defendant Sharpless was insolvent, and that plaintiff had, prior to the assignment, a valid claim against Sharpless in an amount exceeding the amount of the judgment. The defendants Harl & Tinley accepted the assignment in payment of services, without knowledge of plaintiff's claim. In opinion it is said:

''As against Sharpless, the right of the plaintiff to have relief in equity to prevent the enforcement of the judgment, so as to defeat the setting off of Sharpless' indebtedness to plaintiff, Sharpless being insolvent, is perfectly plain. The facts bring the case completely within the general jurisdiction of equity to enforce a set-off. In the replevin suit, in which Sharpless recovered his judgment, the indebtedness of Sharpless to plaintiff on account could not be interposed as a counterclaim (Code,

Section 4164) ; and, if Sharpless were to be allowed to enforce his judgment, plaintiff would be in the position of being compelled to pay this judgment, although Sharpless is indebted to it in amount in excess of the judgment in his favor. That a court of equity will furnish relief by way of decreeing an equitable set-off in such cases is well settled (citing cases). * * * To defeat this equitable right of plaintiff, defendants Harl & Tinley insist on their assignment, taken without notice, as they allege, that plaintiff had any claim against Sharpless. So far as their rights under the assignment are predicated upon their attorney's lien, they are, however, subject to any right of set-off which plaintiff had at the time the judgment was recovered. Their lien was on money due their client in the hands of the adverse party (Code, Section 321) ; and if, at the time the judgment was recovered, Sharpless owed plaintiff more than the amount of the judgment recovered by him against plaintiff, then there was no money in the hands of plaintiff due to Sharpless (citing cases). * * * As assignees of the judgment, Harl & Tinley are in no better situation than Sharpless was, as against plaintiff's equitable right of set-off at the time the judgment was assigned to them. With reference to the assignment, a judgment is simply a chose in action, and the assignee takes subject to any defense or right of set-off, legal or equitable, which was available in favor of the judgment debtor as against the assignor (citing cases)."

See, also, *Hurst v. Sheets and Trussell*, 21 Iowa 501.

In conclusion, we turn to the question, Did appellee Edith Keairnes McIntosh estop herself by her conversation and conduct from offsetting her judgment against the claim of attorney's lien? It has heretofore been noted that the attorneys appellant pleaded an estoppel against the appellee. One of the attorney appellants testified that, before he made the written contract of employment on a contingent fee basis with Mary McIntosh, he inquired directly of the appellee (who was the defendant in the alienation suit) if she (Edith) had any claim against Mary McIntosh, and that she (Edith) replied in the negative. Both Edith and her then husband Scott McIntosh denied that any such conversation occurred, or that she made such a reply to the attorney at any time. True, the attorneys appellant testified that the contingent fee contract would not have been entered into, had such a claim existed, which

later became the basis of the action by Edith McIntosh on the promissory notes in question in her suit against Mary. The evidence involved in determining the pleaded estoppel is in sharp conflict, and we hold that the pleaded estoppel of the attorneys defendant is not proved. The record fails to disclose whether the attorney revealed to Edith anything about the contract relationship between him and Mary, nor is it shown that Mary knew anything about the reason for the inquiry, if one there was, by the attorney, or that Edith had reason to believe that the attorney would rely upon her statement, as now claimed by the attorney defendants. It must be borne in mind that the attorney now claiming the lien was at that time adverse to the instant plaintiff, and she was not bound to confide any communication to the attorney.

In an early decision of this court it is said that "estoppel is not favored in law, and must always be clearly proved." *Baldwin v. Lowe,* 22 Iowa 367. In *Anfenson v. Banks,* 180 Iowa 1066, l.c. 1091, it is said:

"The courts do not hesitate, however, to uphold a claim of estoppel wherever it is essential to prevent fraud."

In the instant case, the evidence fails to disclose fraud. It is essential to an equitable estoppel that the representation or statement, howsoever it arises, must be of material facts, and must have been willfully intended to lead the party setting up the estoppel to act upon the same, or there must have been reasonable grounds to anticipate that he would change his position or in some way act on the faith of the conduct or representations, to his detriment. 21 Corpus Juris 1120 *et seq.,* Paragraph 123 *et seq.*

Upon a careful review of the evidence and the applicable legal principles, we conclude that the findings of the trial court and the decree entered thereon must be, and it is, therefore,—*Affirmed.*

All the justices concur.