FIRST STATE BANK OF FREDERICKSBURG, Appellee, v. GEORGE L. WESTENDORF et al., Defendants; NORTHERN LUMBER COMPANY, Appellant.

NORTHERN LUMBER COMPANY, Appellant, v. GEORGE L. WESTENDORF et al., Appellees.

No. 41007.

NOVEMBER 24, 1931.

Blankenhcim, Opdycke & Sheakley and R. Feyerbend, for appellant.

. Geiser & Donohue, for appellee.

GRIMM, J.—There was a motion to dismiss this appeal and a resistance, but upon our view of the case it is unnecessary to consider the same.

For the sake of brevity, the First State Bank of Fredericksburg, Iowa, will hereinafter be called "the bank," and the Northern Lumber Company "the lumber company."

Very briefly stated, it appears that in August, 1926, one Shaffer executed a certain note to the bank for $7,250.00 and a mortgage on 122 acres of land to secure the payment of the note. In October, 1926, George L. Westendorf purchased the land subject to the mortgage, the possession of the land and the deed therefor to be given on March 1, 1927. The contract provided that the buildings were to be "in good shape at that time."

On February 18, 1927, the dwelling house on the mortgaged land, while occupied by the tenant, was destroyed by fire. The bank collected the $3,000.00 fire insurance. Westendorf indicated that he would not complete the transaction unless a suitable house were built on the farm, whereupon it was agreed between Westendorf and the bank that the $3,000.00 collected for insurance would be used to replace the house. Westendorf then secured plans for a house from the lumber company and contracted for the delivery of the material to construct the same. The cost of the material exceeded the $3,000.00. The lumber company filed its lien and seeks to enforce it as prior to the mortgage lien of the bank on the land. Among other things, the

lumber company in substance claims that Westendorf became the agent of the bank in procuring the material, and as such agent bound the bank to pay for the entire bill of material under a mechanic's lien. The trial court held the mortgage lien superior.

The real question for consideration and determination is as to the priority of the bank's mortgage or the lumber company's mechanic's lien.

I. The appellant assigns as error that the court did not permit the sale and removal of the building from the land for the satisfaction of the lien of the lumber company. The record shows that the house is a modern one, with plumbing and electric wiring, with a basement 26 x 48 feet under the entire house. The evidence shows that it would cost a substantial sum of money to remove the house from the premises and that the farm would be seriously damaged by the removal of the house. This court has said in Crawford-Fayram Lumber Company v. Mann, 203 Iowa 748 (l. c. 752), the following:

"Where a valuable dwelling is constructed according to modern methods, and connected with the real estate by an improved basement, and equipped with the modern conveniences of water, heat, gas, and sewerage, with valuable plumbing extending from basement upward, it becomes almost unavoidably an integral part of the real estate, and cannot be removed without destruction of a substantial part of its value."

Other cases upon the same point might be cited. We are clearly of the opinion that under the facts in this case the rule above quoted is controlling.

II. It is contended by the appellant that the court erred in not decreeing under the last sentence of subsection 1 of Section 10290 of the Code, which reads as follows:

"If the court shall find that such building should not be sold separately, it shall take an account of and ascertain the separate values of the land, and the building, and order the whole sold, and distribute the proceeds of such sale so as to secure to the prior lien, incumbrance, or mortgage priority upon the land, and to the mechanic's lien priority upon the building."

In considering this question, it must be borne in mind that

478

at the time of the transaction between the bank and Westendorf, there was a house on the land.

The $3,000.00 of insurance, in reality, was a part of the bank's security. That $3,000.00 was, in fact, paid to the lumber company on its account for material furnished. The lumber company has not seen fit to introduce any evidence to show whether the land with the new house is more valuable than it was with the old one. No evidence has been introduced as to the value of the land or the value of the building or the value of the land and the old building or the value of the land and the new building. Without any evidence on the subject, nothing can be done other than as the trial court decreed: that, in the event that the property sells for more than sufficient to satisfy plaintiff's prior claim and judgment, any surplus shall be first applied towards the payment of the mechanic's lien of the Northern Lumber Company.

III. The appellant contends that Westendorf became the agent of the bank in contracting for the material furnished for the erection of the house, and as such agent, bound the bank to pay the entire price of the material purchased or surrender the priority of its mortgage.

By the undisputed evidence, it appears that Westendorf called upon the lumber company for plans and specifications for a house. Westendorf desired to know how much the house, as represented by the plans, would cost. The evidence does not show what the response was, but it clearly appears that Westendorf complained the house was too big, and then explained to the lumber company that the money which was available for the building of the house was the $3,000.00 proceeds of the fire insurance on the house which burned on the farm.

The following is a part of the testimony of the agent and representative of the lumber company in reference to what transpired immediately before the purchase of the material.

''They told me they were going to turn this insurance money over for the payment of building a new home. I couldn't say the exact date of the talk, but it was before I sold the estimate.

''Q. Did they tell you·they had been to see Mr. Koerth (the cashier of the bank)? A. Yes, they said that he had told them that he would turn over the money that he got for the insurance to put up a new building.''

It clearly appears from the record that the lumber company knew that the bank held a mortgage on the premises upon which the house was to be erected. It is not contended that any agent or representative of the bank ever had any personal conversation or correspondence with any agent or representative of the lumber company, except as it is claimed that Westendorf became the agent of the bank in purchasing the material.

A very careful examination of the entire record convinces us against the appellant's contention in this regard. There is nothing in the record to show that in the original sale of the material by the lumber company to Westendorf the lumber company relied, in any regard whatsoever, upon the credit of anyone save and except Westendorf. The lumber company understood that the $3,000.00, the proceeds of the insurance on the old farm house, would be used in payment of the building, and it was so used. The claim of the lumber company is for the excess of the bill over the $3,000.00.

The only evidence in the record of authority by the bank to Westendorf is to the effect that the bank authorized Westendorf to advise the lumber company that the $3,000.00 insurance money would be used to pay for the material for the house. There is nothing in the record even tending to show that the bank authorized Westendorf to say anything to the lumber company about the bank's promise to loan some money to Westendorf to complete the house. There is nothing in the record to support either an express or implied agreement on the part of the bank to pay the excess over the $3,000.00.

In Hunt Hardware Company v. Herzoff, 196 Iowa 715, this court said:

"Mere knowledge by the owner that a purchaser of real property from him under a contract for a deed, to be executed upon the payment of the purchase price, has placed improvements on the property, is not sufficient to create an implied promise upon his part to pay for such improvements, nor to charge his interest therein with a lien. Young v. Swan, 100 Iowa 323; Beh v. Moore, 124 Iowa 564; Oregon Lbr. Co. v. Beckleen, 130 Iowa 42; Cedar Rapids S. & D. Co. v. Dubuque Realty Co., 195 Iowa 679; Sheppard v. Messenger, 107 Iowa 717."

This court said in Joyce Lumber Co. v. Wick, 200 Iowa 796:

"Mere knowledge on the part of the vendor that the vendee had made improvements on the building is not sufficient to create an implied promise on the part of the vendor to pay for the improvement. Hunt Hdw. Co. v. Herzoff, 196 Iowa 175. Nor does it create a lien on the interest of the vendee in favor of the materialman, superior to the lien of the vendor. Ellis v. Simpson, 199 Iowa 671; Royal Lbr. Co. v. Hoelzner, 199 Iowa 24.''

In Kimball Bros. Company v. Fehleisen, 184 Iowa 1109, at 1115, this court said:

"To bind the vendor's interest or title in the land then, the improvement must have been made by his inducement or on his authority, express or implied.''

Westendorf owned the land, and had a perfect right to contract for improvements thereon. The mortgage to the bank was on record, and the lumber company knew of the said mortgage at the time the materials were sold and delivered. Mere knowledge on the part of the bank (if the bank knew) that the owner was contracting for a house which would cost more than the $3,000.00 placed the bank under no obligations to the lumber company to pay for said material or surrender its prior lien.

IV. The appellant seeks to establish an estoppel against the bank on the excess price of the material over the $3,000.00 paid.

As has been previously said, prior to and at the time the estimate of the cost of the materials was furnished by the lumber company and the bill of lumber was sold to Westendorf, the lumber company was definitely informed that the building was to replace the one burned on the farm and it was to be built from the insurance money which the bank possessed, amounting to $3,000.00. By the oral contract with the lumber company, payments were to be made in installments, and the evidence shows that about the time the first installment was paid, some conversation took place between Westendorf and the lumber company in reference to the fact that $3,000.00 was insufficient to pay for the material.

It appears without contradiction from the testimony of the representative of the lumber company that after they knew the total amount of the material to be used in the house, Westendorf told them he didn't think he would have enough money from

the insurance to pay the bill. Nevertheless, no representative of the lumber company made any effort to see any representative of the bank or communicate with them in relation to the balance. A reading of the entire record on this subject indicates that the lumber company was relying upon the credit of Westendorf for the cost of the material over the $3,000.00. It appears from the record that after the construction of the house had been commenced, Westendorf, realizing that the $3,000.00 would not pay for the house, asked the cashier of the bank if he (Westendorf) could borrow the money to complete the job. It is claimed that the bank promised to loan Westendorf the money.

It is also claimed that Westendorf told the agent of the lumber company that the bank had agreed to loan to Westendorf some money to finish the job. The amount, however, was never agreed upon between the bank and Westendorf. Later, it appears, the bank limited the amount of its loan to $250.00, which was not enough. This was on August 3, 1927, at which time the bank wrote Westendorf a letter to that effect.

As previously stated, it is not claimed that the bank agreed to loan Westendorf any particular sum of money. It is probable that Westendorf was disappointed in the amount he was subsequently allowed to borrow from the bank, but at the time of the conversation between Westendorf and the lumber company, the bank had not fixed any amount, and necessarily the lumber company was not told that the bank was going to loan to Westendorf any particular amount of money. Regardless, however, of this question of amount, the money was to be loaned by the bank to Westendorf, and it clearly appears that the lumber company was relying upon the credit of Westendorf, and not upon the bank, to pay the balance of the material.

It cannot be claimed by the lumber company that the bank perpetrated any fraud upon it, nor can it be claimed that Westendorf perpetrated any fraud. The lumber company was told that the bank had agreed to furnish some money, but not how much. The bank did furnish some money in excess of the insurance money, but not enough to satisfy the lumber company's claim. It satisfactorily appears that the lumber company was willing to trust Westendorf for the excess.

Upon this question of estoppel, this court, in McIntosh v. McIntosh, 211 Iowa 750 (l. c. 757), said:

482

"In an early decision of this court it is said that 'estoppel is not favored in law, and must always be clearly proved.' Baldwin v. Lowe, 22 Iowa 367. In Anfenson v. Banks, 180 Iowa 1066, 1. c. 1091, it is said: 'The courts do not hesitate, however, to uphold a claim of estoppel wherever it is essential to prevent fraud.' In the instant case, the evidence fails to disclose fraud. It is essential to an equitable estoppel that the representation or statement, howsoever it arises, must be of material facts, and must have been willfully intended to lead the party setting up the estoppel to act upon the same, or there must have been reasonable grounds to anticipate that he would change his position or in some way act on the faith of the conduct or representations to his detriment. 21 Corpus Juris 1120 *et seq.*, Paragraph 123 *et seq.*"

In City Bank v. Alcorn, 188 Iowa 592, this court said:

"An estoppel is not favored in the law, and strict proof of all its elements is demanded."

See also Baldwin v. Lowe, 22 Iowa 367; Cheshire v. McCoy & Henry, 205 Iowa 474. Other cases might be cited.

The lumber company has not met the test for the establishment of an estoppel. All of the claims of the appellant have been carefully considered, and we conclude that, upon the whole record, the trial court correctly ruled the mortgage lien of the bank prior to the lien of the lumber company, and in all respects the decree is correct.

It follows that the cause must be, and is,—Affirmed.

FAVILLE, C. J., and EVANS, MORLING, and KINDIG, JJ., concur.