HENRY SPIEKER et al., Executors, Appellants, v. CASS COUNTY FAIR ASSOCIATION et al., Appellees.

ATLANTIC LUMBER & COAL COMPANY, Plaintiff in Cross-petition, v. CASS COUNTY FAIR ASSOCIATION et al., Defendants in Cross-petition.

No. 41736.

June 20, 1933.

R. W. Cockshoot and G. C. Dalton, for appellants.

Tom C. Smith and Boorman & Whitmore, for appellees.

CLAUSSEN, J.—I. The mortgage sued on was executed on the 26th day of April, 1928. A pavilion on the fairground property was destroyed by fire in the year 1930. Between the 19th day of June and the 3d day of September, 1930, the lumber company furnished lumber and materials, of the total value of $4,505.36, for the construction of a new grand stand. Payments were made from time to time on the account until December 23, 1930, when the amount due had been reduced to $2,239.20 and on that date a note in that amount was given by the fair association to the lumber company. This note carried interest at the rate of 7 per cent and contained the usual provisions for the payment of attorney fees. The record

is wholly insufficient to sustain the contention that this note was accepted in payment of the debt. In due time the lumber company filed its statement claiming a mechanic's lien. The grand stand was rather a large structure. It was built upon rows of concrete piers. The uprights were fastened to the piers by being bolted to iron straps embedded in the concrete. Quite a number of witnesses testified that the grand stand could be removed from the premises without injury to it or to the premises. Such testimony is not controverted. The trial court found that the grand stand could be removed without injury to the building or the premises, and established the lumber company's lien upon the building as being prior to the lien of plaintiff's mortgage, and provided that the purchaser, at execution sale, might remove the building upon giving bond conditioned upon the building being removed without injury to the premises. Under the record this action of the trial court was correct. The priorities of the lien of the mortgage and the mechanic's lien are regulated by statute. In the fact situation existing in this case, the mechanic's lien of the lumber company was clearly entitled to priority over the lien of the mortgage, so far as the grand stand is concerned. Code, section 10290; Lincoln National Life Insurance Co. v. McSpadden, 211 Iowa 97, 232 N. W. 824. The record does not make a case like Crawford-Fayram Lbr. Co. v. Mann, 203 Iowa 748, 211 N. W. 225, in which priority was denied the mechanic's lien, on account of the damage that would be occasioned by the removal of the building.

Appellant relies strongly upon the case of First State Bank v. Westendorf, 213 Iowa 475, 239 N. W. 73. In that case the bank held a mortgage on a tract of land which had upon it a dwelling house. Subsequent to the execution of the mortgage the house burned. Insurance on the house in the amount of $3,000 was paid to the bank. Subsequently a new house was built upon the premises, and the question in the case was as to the priority of the mortgage and the mechanic's lien for materials used in building the house.

The trial court granted priority to the mortgage. The house was modern in every respect, with plumbing, heating, and electric wiring, and with a basement 26x48 feet under the entire house. The testimony indicated that the house could not be moved from the premises without causing considerable damage. In this situation this court sustained the refusal of the court to permit the removal of the house. It was contended that the court should have

taken an account of the separate values of the land and the buildings and prorated the proceeds of sale under execution between the mortgage and the lien, but this court pointed out that there was no evidence in the record from which this could be done. In considering this phase of the question, the fact that the insurance money, received by the bank, had been paid to the lumber company, on its account for materials furnished, and that the money was in truth a part of the bank's security, because the burned house was on the land at the time the mortgage was executed, are referred to. At the time negotiations were made for the purchase of the materials for the construction of the new house, the materialman knew that the bank held a mortgage on the land, had collected the $3,000 insurance, and was advancing the $3,000 to put up the new house. The general equities created by such facts find no counterpart in the case at bar. In the case at bar there is nothing to indicate that anything was said about insurance at the time the lumber was purchased for the construction of the grand stand. The first mention of the application of the insurance money to the payment of the materials entering into the new pavilion was at the time of the execution of the note some three months after the building had been completed. It is of course obvious that the rights of the respective parties were then definitely established. In view of the fact that the grand stand could be removed without injury to it or to the premises upon which it stood and that it was a new, complete and independent structure, the rights of the lumber company, under its lien, assured the privilege of removing the building. The fact that some three months after the completion of the building something was said to it about insurance money or even the actual payment of insurance money to it could not destroy such right and would not amount to a waiver thereof.

II. It has been stated that subsequent to the completion of the grand stand the fair association gave the lumber company a note for the balance due for materials used in the construction of the grand stand, bearing interest at the rate of 7 per cent, and providing for the payment of attorney fees for the collection of the note. The trial court allowed interest on the balance due on materials used in the grand stand at the rate of 7 per cent, and taxed an attorney fee in favor of the lumber company's attorney as part of the costs, and established the lien of the lumber company for all such items over appellant's mortgage. The rights

given to the lumber company by law were superior to appellants' rights under the mortgage, but such priority attended only the rights given by law. The record discloses no agreement in relation to the payment of interest prior to the execution of the note. In this situation the legal rate of interest would be payable. The law makes no provision for the payment of attorney fees in the absence of written contract. It follows that the decree of the trial court enlarged the rights given the lumber company by law in so far as the decree provided for a higher rate of interest than 6 per cent and by taxing an attorney fee as part of the costs, and preferring such items over appellants' mortgage. Bissell v. Lewis, 56 Iowa 231, 9 N. W. 177.

The decree of the trial court must be modified by eliminating the provision for the taxation of attorneys' fees for the lumber company's attorneys as part of the costs and by changing the rate of interest on the lienable item entitled to priority to 6 per cent. As thus modified, the decree of the trial court is affirmed. —Modified and affirmed.

KINDIG, C. J., and EVANS, ALBERT, DONEGAN, and STEVENS, JJ., concur.