G. N. LEACH, Appellant, v. S. E. MINICK, *et al.*

**Mechanic's Lien:** MORTGAGE AND LIEN: *Priority and Distribution.*
McClain's Code, section 3317, subdivision 4, provides that, where

a mechanic's lien for buildings erected on land incumbered with prior liens has attached, the court may order such building to be separately sold to satisfy the mechanic's lien, and the purchaser may remove same; but that if. in the discretion of the court, the building should not be separately sold, the proceeds of the sale of the whole premises shall be rateably ditributed between the prior lien holders and the holder of the mechanic's lien according to the respective values of the land and the building; and that, "in case the premises do not sell for more than sufficient to pay off the prior mortgage or other liens, the proceeds shall be applied on the prior mortgage or other liens." *Held*, that where the building is a part of the realty, so that it cannot be removed and separately sold, and the proceeds of the sale of the entire property are more than sufficient to satisfy the prior lien, but are insufficient to sat-- isfy such liens and the subsequent mechanic's lien the proceeds must be applied in full payment of the prior liens; the holder of the subsequent lien not being entitled to a priority to the amount of the value of the building.

*Appeal from Buchanan District Court.*—HON. A. S. BLAIR,. Judge.

TUESDAY, OCTOBER 18, 1898.

IN this case several actions were submitted upon the same evidence for the purpose of determining the order of priority of several liens upon certain real estate in Independence, Iowa, and the manner in which the proceeds that might arise from the sale of the property should be applied. From the decree rendered, the plaintiff, G. N. Leach, appeals, and the defendants Price & Smith appeal from so much thereof as is adverse to them. The only contentions presented on this appeal are between the plaintiff and the defendants Price & Smith.—*Modified* and *affirmed.*

*Cook & Leach* for plaintiff.

*E. E. Hasner* for defendants Price & Smith; *H. W. Holman* for defendant Jacobs; *F. J. O'Brien* for defendant Burke; *Ransier & Everett* for defendan Hussey.

No appearance for J. E. Moore, Betsy Ann Moore, and John Wengert.

GIVEN, J.—I.  It is shown by the record that on November 2, 1891, the defendant J. E. Moore, the then owner of the lot in question, his wife joining therein, executed a mortgage thereon to defendant John Wengert, to secure the payment of one thousand two hundred and fifty dollars, with seven per cent. interest.  Afterwards Moore deeded the lot to the defendant John Hussey, who assumed to pay said mortgage indebtedness, and on February 29, 1896, Hussey conveyed the lot to the defendant Minick, who assumed to pay said mortgage indebtedness.  Minick erected a barn on the lot, the defendants Price & Smith furnishing material therefor to the amount of three hundred and ninety-nine dollars and eight cents.  On October 5, 1896, said barn was destroyed by fire, only a small part of the lumber and foundation walls being saved.  On the next day Price & Smith filed their duly verified statement for a mechanic's lien in said sum of three hundred and ninety-nine dollars and eight cents.  Minick, having decided to erect another and larger barn on the same lot, did, about November 20, 1896, contract with the plaintiff, Leach, to furnish materials therefor, which he did, to the amount of one thousand eight hundred and eighty-five dollars and sixty-five cents, and for which he filed his duly verified statement for a mechanic's lien.  The defendant Thomas Burke furnished material for the new barn to the amount of twenty-seven dollars and twenty cents, for which a statement for a lien was filed prior to that of the plaintiff.  Defendant Randall Jacobs furnished material to the amount of sixty-eight dollars and eighty-seven cents, and defendant Clark-Woodward Company to the amount of forty-two dollars, for each of which a statement for a lien was filed.  March 30, 1894, plaintiff commenced this action against Minick to foreclose his mechanic's lien.  May 6, 1897, Wengert commenced an action to foreclose his mortgage, and May 13th Price & Smith commenced an action to foreclose their mechanic's lien.  On May 25, 1897, judgment for one thousand two hundred and ninety-nine dollars and thirty-three cents and seventy dollars and

thirty-nine cents costs and decree of foreclosure of said mort-
gage was rendered in favor of Wengert, the decree providing
that the real estate described in the mortgage, and the prop-
erty of S. E. Minick, should be first exhausted before resorting
to the property of John Hussey. The record shows that the
remainder of said cause was consolidated with this case by
agreement of parties and order of court entered of record.
On June 1, 1897, this cause came on for trial, and the fol-
lowing stipulation and agreement was made and entered of
record: "It is stipulated and agreed that the testimony
taken in this case shall be used and received by the court in
the trial and disposition of cases No. 9,830 and 9,797, equity,
the same as though the evidence had been separately taken in
each of said cases, and all of said causes are submitted for
trial and decision upon the evidence taken in this case." There
is no dispute as to the amount due to either lienholder, except
to Price & Smith. Their statement for lien, as made and veri-
fied, was for three hundred and ninety-nine dollars and eight
cents, but by mistake the clerk indorsed and entered it as for
three hundred and twenty-nine dollars and eight cents. As no
one has been misled by this error, Price & Smith are entitled
to be allowed in this adjustment the correct amount, namely,
three hundred and ninety-nine dollars and eight cents. The
court admitted evidence upon which it found that the value
of the lot was one thousand five hundred dollars; the value
of the new barn, two thousand five hundred; the lot and new
barn, four thousand dollars; and that the value of the materi-
als saved from the burnt barn that went into the new barn was
one hundred and seventy-five dollars. Judgment was entered
in favor of Price & Smith for four hundred and ten dollars
and eighty-two cents with interest, and twenty-one dollars
and ninety-five cents costs, which was decreed to be a second
lien, and superior to those of Leach, Minick, Burke, Jacobs,
and Clark-Woodward Company to the extent of three hun-
dred and five dollars and twenty-eight cents and twenty-one
dollars and ninety-five cents costs, and that the balance of

their judgment is junior to the lien of Leach, Burke, Jacobs, and Clark-Woodward Company. The claim of Burke was established as a third lien, and prior to Leach, Jacobs, Clark-Woodward Company, and junior to Price & Smith and Wengert. Judgment was rendered in favor of plaintiff, G. N. Leach, for one thousand nine hundred and forty-seven dollars and eighty-two cents, with interest, and eighty-nine dollars and forty-eight cents costs, and his lien established and decreed to be junior to the liens of Wengert and Burke, "and the lien of Price & Smith to the extent of three hundred and five dollars and twenty-eight cents, and the same is superior to the rights, interests, and claims of S. E. Minick, Randall Jacobs, and Clark-Woodward Company in said premises." It was decreed that the proceeds arising from the sale of said premises be appropriated as follows: "First, to the payment of John Wengert's claim and costs in full; second, to the payment of Price & Smith's claim to the extent of three hundred and five dollars and twenty-eight cents and costs; third, to the payment of Thomas Burke's to the extent of twenty-nine dollars and four cents; fourth, in satisfaction of his own claim and costs,"—meaning the claim of plaintiff. Judgments were rendered in favor of Jacobs and Clark-Woodward Company, and their liens established as junior to the liens of Wengert, Leach, Burke, and of Price & Smith to the extent of three hundred and five dollars and twenty-eight cents. It was decreed "that the lien of Price & Smith, over and above the sum of $305.28, is junior and inferior to that of G. L. Leach, John Wengert, Thomas Burke, Randall Jacobs, and Clark-Woodward Company."

II. John Hussey, though claiming not to be a party to this action, has filed an additional abstract, in which he shows the decree in the foreclosure case of Wengert against Moore et al. on the mortgage. He also presents an argument in which he claims he is entitled to the benefit accorded to him in that decree. It is provided in that decree that the mortgaged property and the property of Minick shall be first

exhausted before pursuing the property of Hussey. This decree fully recognizes and follows that decree; therefore Mr. Hussey has no cause for complaint.

III. As already stated, the contentions which we are called upon to consider are solely between the plaintiff, Leach, and the defendants Price & Smith, and are as to which of their liens is entitled to priority. Plaintiff concedes that Wengert and Price & Smith have the first liens on the lot, and claims that he has the first lien on the new building, subject only to the lien of Burke for twenty-seven dollars and twenty cents, which was filed before his. He contends that, as the building cannot be removed, the lot and building should be sold together, their separate values ascertained, and the proceeds of the sale distributed so as to secure to Wengert and to Price & Smith priority on the lot, and to plaintiff priority upon the barn; "provided, always, that, in case the premises do not sell for more than sufficient to pay off the Wengert mortgage and Price & Smith lien, with interest and costs, then the proceeds shall be applied on said mortgage, and lien, interest, and costs." Section 3311, McClain's Ann. Code, provides for a lien in favor of every person who does labor upon, or furnishes materials, machinery, or fixtures for, any building, erection, or other improvement upon land. The fourth subdivision of section 3317, McClain's Ann. Code, is as follows: "Fourth. The liens for the things aforesaid or the work including those for additions, repairs and betterments, shall attach to the building, erections or improvements for which they were furnished or done, in preference to any prior lien, or incumbrance, or mortgage, upon the land upon which such erection, building or improvement belongs, or is erected or put. If such material was furnished or labor performed in the erection or construction of an original independent building, erection or other improvement commenced since the attaching or execution of such prior lien, incumbrance, or mortgage, the court may, in its discretion, order and direct such building, erection or improvement to be

separately sold under execution, and the purchaser may remove the same within such reasonable time as the court may fix. But, if, in the discretion of the court, such building should not be separately sold, the court shall take an account and ascertain the separate value of the land, and the erection, building, or other improvement, and distribute the proceeds of sale so as to secure to the prior mortgage or other lien priority upon the land, and to the mechanic's lien priority upon the building, erection or other improvement. If the material furnished or labor performed was for addition to, repairs of, or betterments upon, buildings, erections or other improvements, the court shall take an account of the values before such material was furnished or labor performed, and the enhanced value caused by such additions, repairs or betterments, and upon the sale of the premises, distribute the proceeds of the sale so as to secure to the prior mortgage or lien priority upon the land and improvements as they existed prior to the attaching of the mechanic's lien, and to the mechanic's lien priority upon the enhanced value caused by such additions, repairs or betterments. In case the premises do not sell for more than sufficient to pay off the prior mortgage or other lien, the proceeds shall be applied on the prior mortgage or other liens."

The materials which plaintiff furnished were for the erection of an original, independent building, which the court found, and the parties concede, should not be separately sold. If it were not for the concluding sentence of said fourth paragraph, there would be no question but that plaintiff is entitled to a lien upon the building prior to the mortgage of Wengert and to the lien of Price & Smith, and that in that case the court should take an account, ascertain the separate values, "and distribute the proceeds of sale so as to secure to the prior mortgage, or other lien, priority upon the land, and to the mechanic's lien priority upon the building." This part of said section 3317 was construed in *Bank v. Schloth,* 59 Iowa, 316, an action to enforce a mechanic's lien: "The machinery

and material for which the lien is claimed were put up and used in a building before erected, and, as we have seen, it is conceded they became a part of the realty." After quoting said last sentence of section 3317, and referring to the argument of counsel, the court says as follows: "The plain language we have quoted must be regarded as a limitation upon the language preceding it in the same section, to the effect that, if the premises do not sell for more than enough to pay off the prior mortgage or other lien, the accounting and distribution of proceeds of sale shall not be required. In this view, it is not in conflict with any other words of the statute. We must enforce the provision as it reads, and cannot wrest its meaning on the ground that another construction would be more equitable, and would not be in conflict with other provisions of the same statute. It must be admitted that paragraph 4, section 2135, is obscure and capable of adverse construction. The interpretation we adopt gives more nearly full effect to all its language,—'Ut res magis valeat quam pereat.' It also gives the language quoted the force of a proviso which has the effect, without being directly contrary to the purview of the statute, of limiting its application. This is the office of a proviso. A different interpretation would wholly nullify the language under consideration." In *Curtis v. Broadwell,* 66 Iowa, 662,—an action to enforce a mechanic's lien,—the facts were as follows: October 20, 1882, Broadwell executed to defendant C. Wright, trustee, a deed to secure an indebtedness then existing. Thereafter, on November 9, 1882, plaintiff commenced furnishing Broadwell materials used in the erection of a building, the last being furnished on April 3, 1883. The district court found the value of the land to be two thousand five hundred dollars, and the value of the building to be three thousand dollars, and decreed that both be sold together, and that of the proceeds two dollars of each five dollars be paid to C. Wright, and three dollars of each five dollars to the plaintiffs; thus holding that the trust deed did not attach

to and bind the building, and that the sum realized from the sale of the building should be applied to the plaintiff's claim. This court referred to *Bank v. Schloth, supra,* and said: "We held in that case that additions to a building which became a part of the realty are subject to a mortgage as against a subsequent mechanic's lien." The holding that the last sentence of said section had the force of a proviso limiting the application of the provision, without being directly contrary to its purview, was adhered to. It was further said: "It cannot be doubted that, if this section does not stand in the way, a prior mortgage will prevail against a subsequent mechanic's lien for buildings or improvements which become a part of the realty. Under the plain language of the section, it is obvious that the same rule applies alike to improvements, betterments, or additions to buildings and to new and independent structures. It cannot be questioned that the building for which materials were furnished by plaintiffs did become a part of the real estate. The case was remanded for decree "providing that C. Wright's deed of trust is superior to plaintiff's lien, and Palmer's judgment inferior thereto." Palmer was an attaching creditor. These cases clearly held that where the building or other improvement becomes a part of the real estate, so that it may not be separately sold and removed, prior mortgagees or lienholders are entitled to priority over subsequent lienholders for improvements or independent structures to the extent of such prior liens. In the recent case of *Tower v. Moore,* 104 Iowa, 345, it was held otherwise; the court finding that the building could be removed without material injury to the security of the earlier lienholders. That was an action to foreclose a mortgage given in 1892, and appellee filed a cross bill asking to have a mechanic's lien established upon the building for material furnished for its erection, and subsequent to said mortgage, and that his lien be decreed superior to the mortgage. The court below found in appellee's favor, although it was shown that the value of the premises, including the improvements, did not exceed the amount of the mortgage indebtedness. It was claimed by appellant that

under no circumstances can the holder of a mechanc's lien be given a preference, as against an independent building, over a prior mortgage of the land, unless the value of the lien, with such improvement, exceeds the mortgage debt. The court says: "A proper construction of this statute, we think, must give to the holder of a mechanic's lien against an independent building the priority of right in every case where the court shall find as a fact that such building can be removed without material injury to the security of the earlier lienholder; but, where no such finding is made, the land must be sold, and the purchase price applied first in payment of the prior incumbrances." This decision is based upon, and in harmony with the provision of said fourth subdivision, in cases where the court finds that the building, erection, or improvement should be separately sold. In this case, and in the case of *Bank v. Schloth,* and also that of *Curtis v. Broadwell, supra,* it was found that the building, erection, or improvement should be separately sold. *Eagle Iron Works v. Des Moines S. Ry. Co.,* 101 Iowa, 290, is cited, but we do not find that this question was considered in that case. Adhering to the law as announced in *Bank v. Schloth* and *Curtis v. Broadwell, supra,* we hold that as the new barn has become a part of the realty, and cannot be separately sold and removed, the property must be sold as an entirety, and that the defendants Wengert and Price & Smith are entitled to be first paid out of the proceeds of the sale, and that the other lienholders are entitled to be paid, in the order decreed by the district court, out of any balance that may remain after satisfying said liens of Wengert and of Price & Smith.

IV. It will be observed that the judgment in favor of Price & Smith is for four hundred and ten dollars and eighty-two cents, and that the court decreed three hundred and five dollars and twenty-eight cents thereof as a prior lien to the lien of the plaintiff, Leach, and of this Price & Smith complain on their appeal. It follows from what we have said that Price & Smith are entitled to priority over the plaintiff to the full amount of their claim. The decree of the district court is

modified on the appeal of Price & Smith, and affirmed on the appeal of G. N. Leach, and the case is remanded for decree in harmony with this opinion.—MODIFIED in part, and AFFIRMED in part.