TABER LUMBER COMPANY et al., Appellants, v. ROBERT C. CON-
VERSE et al., Appellees.

CHARLES F. FLANAGAN, Appellee, v. ROBERT C. CONVERSE et al.,
Appellees.

**MECHANICS' LIENS:** Priority—Mortgages on Remodeled Building.
Pre-existing mortgages on real estate hold their priority over sub-
sequent liens of materialmen for material furnished for remodeling
and repairing a building.

*Appeal from Marion District Court.*—LORIN N. HAYS, Judge.

MAY 13, 1924.

THE Taber Lumber Company brought an action to fore-
close a mechanics' lien against Robert C. Converse and his wife,
as principal defendants and owners of the real estate involved,
and against other defendants having mortgage liens against
said real estate. Thereafter, defendant Flanagan, holder of a
mortgage upon the Converse property, commenced an action
against Converse and wife and the Taber Lumber Company
and other parties, to foreclose his mortgage. The two actions
were consolidated and tried. The lower court held that the
mortgage liens in favor of Flanagan and J. B. Elliott and Henry
M. Elliott were prior to the mechanics' lien of the Taber Lum-
ber Company, and that the claims and liens of all other defend-
ants were junior to the mechanics' lien of the Taber Lumber
Company. The court denied relief to the Taber Lumber Com-
pany on its claim that the building for which materials were
furnished was a new structure. The Taber Lumber Company
appeals.—*Affirmed.*

*W. H. Lyon,* for appellants.

*L. D. Teter* and *J. H. Johnson,* for appellees.

ARTHUR, C. J.—The issues involved in these consolidated
actions are as to the order and priority of the liens claimed

by the several parties to the actions.  On May 14, 1920, R. C. Converse and his wife, Carrie Converse, were the owners of a farm of 240 acres in Marion County, Iowa, incumbered by mortgages in favor of defendant Flanagan, aggregating $26,000, and also by a mortgage for $1,500, in favor of J. B. Elliott, and by another mortgage for $6,500, in favor of H. M. Elliott, all of which were made and recorded before the Taber Lumber Company sold and delivered to Converse materials for which mechanics' lien is claimed.  Commencing on May 13, 1920, and between that date and November 19, 1920, the Taber Lumber Company sold and delivered to Converse the materials for the construction of or remodeling of a dwelling house upon the Converse farm, in the amount of $1,893.44.  The mechanics' lien was filed on December 9, 1920.

Counsel for plaintiffs, appellants, takes the position that, under the provisions of Code Section 3095, properly applied to the evidence, plaintiffs are entitled to remove the improvement in controversy from the land, or have the value of the rest determined separately from the value of the lands, and have determined the amount of the enhanced value of the land by reason of said improvement.  Counsel for plaintiffs insists that, under the evidence, it is established that the materials furnished were used in the construction of a new building, or practically new building, and that for such reason plaintiffs' mechanics' lien should have priority over the mortgage liens of defendants.

The defendants, appellees, contend that the evidence fairly shows that the lumber and materials furnished by plaintiffs were not used in the construction of a new and independent building, or approximately a new structure, but were used only in remodeling a house which had stood for a number of years, except as to the dining room and kitchen, which is 16x16 feet, built in the year 1918.

Code Section 3095, Paragraph 4, provides:

"If such material was furnished or labor performed in the erection or construction of an original and independent building, erection or other improvement commenced since the attaching or execution of such prior lien, incumbrance or mortgage, the court may, in its discretion, order and direct such building, erection or improvement to be sold separately under execution,

and the purchaser may remove the same in such reasonable time as the court may fix. But if the court shall find that such building should not be sold separately, it shall take an account of and ascertain the separate values of the land, and the erection, building or other improvement, and order the whole sold, and distribute the proceeds of such sale so as to secure to the prior mortgage or other lien priority upon the land, and to the mechanics' lien priority upon the building, erection or other improvement. If the material furnished or labor performed was for additions to, repairs of, or betterments upon buildings, erections or other improvements, the court shall take an accounting of the values before such material was furnished or labor performed, and the enhanced value caused by such additions, repairs or betterments, and, upon the sale of the premises, distribute the proceeds of such sale so as to secure to the prior mortgagee or lien holder priority upon the land and improvements as they existed prior to the attaching of the mechanics' lien, and to the mechanics' lien holder priority upon the enhanced value caused by such additions, repairs or betterments. In case the premises do not sell for more than sufficient to pay off the prior mortgage or other lien, the proceeds shall be applied on the prior mortgage or other liens.''

We have had before us for construction in several cases the above quoted paragraph of Code Section 3095, and have held, in substance and effect, that, where the building has become a part of the realty, if the premises do not sell for more than enough to pay the prior mortgages, an accounting or distribution of the proceeds of the sale is not required; and the entire proceeds are to be applied in satisfaction of the prior liens. *German Bank v. Schloth*, 59 Iowa 316; *Tower v. Moore*, 104 Iowa 345; *Leach v. Minick*, 106 Iowa 437.

To ascertain the character of the structure in which the lumber and materials furnished by plaintiffs were used, we must go to the evidence. Converse, owner of the premises on which the house is located, and Buttrey, the carpenter who had charge of the work on the improvement, were called as witnesses for plaintiff. Converse testified that, at the time the Taber Lumber Company furnished lumber and material to him, there was a dwelling house on the premises, erected in 1877; that said house

needed rebuilding; that the roof was practically all off; that the siding was fairly good. Converse further testified, on cross-examination:

"The size of the old house is 26 by 28 feet. There is a kitchen on the south, built two years ago, 16 by 16 feet. No part of this kitchen was rebuilt. The dimensions of the house, as remodeled, are the same as the old, except we made one change when we built the stairway. We made it 18 inches wider, and 3 feet longer. The walls are the same, outside of that one change. The outside walls of the building were not removed; just the siding taken off. We put on new rafters and new sheeting, right on the old rafters, and gave it a steeper pitch, and put on a dormer. We used the same laths, as far as they would go. We left the old floor in as a subfloor. The joists were left intact, with what few changes were made. The rooms were changed, but we used the same material and laths, so far as we could work them in; and practically the same foundation was left. The rebuilt portion of the house was connected right on with the kitchen and dining room that we had built the year before."

Buttrey, the carpenter, testified that he practically tore the old house down and built it over, putting on a new roof and new rafters and mostly new partitions, leaving the old floor only as a subfloor, and putting in new window and door casings, upstairs and down; that a big majority of the house was new; that the plastering was all new; that a new dormer was installed on the north side, and a new porch on the north; that the old house was in bad state of repair; that the floors were bad, the casings were bad, and the doors were bad; that, in his judgment, it was necessary to repair the house; that in some particulars Converse "went a little further than I would, without lots of money to spend, but the condition of the house was in, it needed repairs very badly." On cross-examination, Buttrey testified:

"I hardly know what per cent of the rebuilt house is new. We used all of the old laths we could. All of the lower joists, with the exception of a few where the wellhole went down into the basement, were left. The second set of joists was left, with the exception of where the wellhole went into the stairway.

The outside siding was all left, with the exception of where we cut this new addition out, and the old rafters were left, up to a certain point where we took the little jog out. The old floors were left in for subfloors. The old side walls of the building, with the exception of where we made a set-out to the west, were left as they were. This set-out was made to accommodate the stairway, and was connected up with the kitchen, and made a part of the same house. This kitchen is 16 by 16 feet, and had been built on the old house before.''

We concur in the findings of the lower court. We think that the evidence fairly shows that no new house or approximately new house was constructed out of the material furnished by plaintiffs; but that, after the mortgages were executed and recorded, the old house was remodeled. The dimensions of the house as remodeled were the same as those of the old house; the foundation was left intact; the outside walls were not removed; the old rafters were not removed; the joists were left intact; the old floors were used as subfloors; the rooms were somewhat changed; but the materials from the old partition walls were used. The rebuilt portion of the house was connected onto the kitchen and dining room, which had been built only two years before the remodeling took place. We think it is very clear that the remodeled house had become a part of the realty, and could not be removed without very material damages to the premises as they existed prior to the time the mortgages were executed, and prior to the time these improvements were made. We think that, under the evidence, in the light of our holdings, the court was right, and did not abuse its discretion, in holding that the remodeled building had become a part of the realty, and that the lumber company was not entitled, under the circumstances, to the relief prayed.

Results in affirmance of the case.—*Affirmed.*

EVANS, PRESTON, and FAVILLE, JJ., concur.