H. B. ANFINSON, Appellee, v. ROY W. COOK, Executor, et al., Appellants; H. P. LASHER et al., Defendants.

No. 44035.

DECEMBER 14, 1937.

REHEARING DENIED APRIL 8, 1938.

Campbell & Campbell, for appellants.

J. P. Shoup and Weir Murphy, for appellee.

HAMILTON, C. J.—This is an action brought by the plaintiff, H. B. Anfinson, to foreclose a mechanic's lien. A brief statement of the facts is necessary. J. M. Skinner, residing in Illinois, was the owner of a quarter section of land in Ida County, Iowa. In June, 1907, Skinner and his wife sold said land by real estate contract to H. P. Lasher of Ida County, Iowa. Lasher's wife was a niece of Skinner. The sale price was $12,800. Of this sum $100 was paid down, an additional $700 was to be paid March 1 following, the balance of $12,000 to be paid on March 1, 1923. In 1922 this contract was extended five years. On October 11, 1927, a renewal contract was entered into, extending date of

final payment to March 1, 1933. All these contracts and extensions were duly recorded in the recorder's office of Ida County, Iowa, the last one on February 25, 1928. It was stated in this contract that the land was sold for the purpose of improvement and cultivation. It also contained a forfeiture clause. All improvements placed thereon were to remain and not be removed or destroyed until final payment for said land. There was a set of buildings consisting of a five room dwelling house, barn 32 x 34, corn cribs, granary and a 50-foot silo. Mr. Lasher's wife and son took possession March 1, 1908, and farmed the same. In 1930 Lasher entered into an oral contract with the plaintiff for the erection of a new dwelling house according to certain written specifications. The contract price was $2,975, plus extras. This did not include the plumbing and heating or the excavation and construction of the basement, just the carpenter work and material. The house was completed and accepted June 4, 1931, the total cost with extras being $3,120.95. About this time the son took unto himself a wife, which apparently was the necessity for more house room. Mr. H. P. Lasher and wife moved into the new house and the son rented the farm from his father and continued from this time on to occupy the original or old dwelling house and pay rent to his father. But perilous times came upon these good farmer folk and after all these years of struggle they defaulted, as did millions of others in those never-to-be-forgotten times through which this country passed from 1931 to 1933. Then, too, the good old uncle and aunt, Mr. and Mrs. Skinner took their journey into that Land Beyond. Mr. Skinner died January 9, 1933, his good wife having predeceased him. The $12,000 due on the contract, plus some $1,000 back interest was due and unpaid. Likewise, there was $1,880.95 still unpaid on the new house. Mr. Anfinson, the plaintiff, had on August 12, 1931, filed his mechanic's lien. Mr. Skinner's will was duly probated in Illinois, and Roy W. Cook was regularly and duly appointed executor. Plaintiff commenced this action on July 8, 1933, to collect the balance due on his contract and to foreclose his mechanic's lien, making Mr. Cook the executor of the Skinner estate and the heirs and legatees under his will parties defendant. Cook as executor on August 14, 1933, gave notice of forfeiture of the real estate contract. This notice of forfeiture, together with service, was duly filed and recorded in the recorder's office of Ida County, Iowa, on October 19, 1933.

This divested Lasher of his equity in the land, the legal title having remained in Skinner, the vendor, as security for the balance of the purchase price until paid.

This being an original and independent building, separate and apart from all the other old improvements, the rights of the parties are fixed and determined by section 10289 and par. 1 of section 10290 of the Code of 1931, which are identical with the corresponding sections in the 1935 Code of Iowa. These statutory provisions have been considered by this court many times, and in most respects the law is now very well settled. In a recent case, Lincoln Nat. Life Ins. Co. v. McSpadden, 211 Iowa 97, 98, 232 N. W. 824, 825, the court, speaking through Justice Stevens, said:

"It is clear, under the provisions of the foregoing statute, that, if material is furnished for and used in the erection of a new and independent building *which may be severed from the realty and removed without substantial injury or damage to either*, the court may, in its discretion, order the same to be sold separately, under special execution, with permission to the purchaser to remove the same." (Italics ours.)

The battle centers around the italicized portion of the above statement of the law, the plaintiff contending, as the trial court found, that this new dwelling house can be so removed; while the appellants say it falls within that class of construction which the court has said is rendered practically impossible of removal, that it therefore became an integral part of the realty and passed with the land to the vendor upon forfeiture of the real estate contract, and that consequently the trial court erred in decreeing its removal.

The house is of frame construction, shingled side walls on the outside, well constructed and insulated and rests upon box sills which are attached to the concrete foundation walls by bolts set in the concrete. The foundation walls are 8 inches thick with 14 inch footings, with a center wall through the basement. The entire basement floor is covered with three inches of concrete. The concrete walls are reinforced with iron rods at the corners and around openings. The basement below the natural ground surface is from four to five and a half feet. The dirt from the basement was placed around the outside of the wall and leveled off. From the top of the basement wall to the floor

is about eight feet. The house is 22 x 28 feet, has a kitchen, dining room and living room together, two bedrooms, a bath and large upstairs. The upstairs room is floored but not finished. The building has a shingle roof. In the bathroom there is a lavatory and a built-in tub. The stool is in the basement. The soil pipe from the bathroom drops down through the wall into the basement and connects with the sewer pipe which extends the twenty-two feet across the building under the cement floor and outside about twenty feet, and connects with a cesspool or septic tank. There is a soft water pressure tank and a hard water pressure tank which force the water upstairs to the lavatory, and there is also a gravity pressure tank in the basement to take care of the sewer. There were about fifty feet of four-inch soil pipe used in the plumbing. There is a shower bath with a floor drain under it in the washroom in the basement. The house is equipped with water pipes for hot and cold water. It is also wired for electricity. Plaintiff himself stated that it was as well constructed as a house of this type could be. It therefore falls within the description or class of buildings which this court has on several occasions said was practically impossible to be moved without serious injury, both to the building and the premises on which it is situated.

In the case of Crawford-Fayram Lbr. Co. v. Mann, 203 Iowa 749, 752, 211 N. W. 225, 227, the trial court held that the building could be removed, and this court said:

"We cannot agree with the finding of the decree that the improvement could be separated from the realty without substantial injury to its value. * * * Where a valuable dwelling is constructed according to modern methods, and connected with the real estate by an improved basement, and equipped with the modern conveniences of water, heat, gas, and sewerage, with valuable plumbing extending from basement upward, it becomes almost unavoidably an integral part of the real estate, and cannot be removed without destruction of a substantial part of its value."

This is, more or less, what might be classified as dictum. And in the case of Lincoln Nat. Life Ins. Co. v. McSpadden, supra, this dictum in the Mann case was again referred to in distinguishing it from the McSpadden case in this language:

"In the next place, the building was permanent in character, and was improved with plumbing and other fixtures, which made the removal practically impossible without serious injury to it and to the premises on which it was situated."

Again, in the case of First State Bank v. Westendorf, 213 Iowa 475, 477, 239 N. W. 73, 74, we find the following statement:

"The appellant assigns as error that the court did not permit the sale and removal of the building from the land for the satisfaction of the lien of the lumber company. The record shows that the house is a modern one, with plumbing and electric wiring, with a basement 26 x 48 feet under the entire house. The evidence shows that it would cost a substantial sum of money to remove the house from the premises and that the farm would be seriously damaged by the removal of the house." The court in this case again quotes the statement from the opinion in the Mann case and concludes:

"We are clearly of the opinion that under the facts in this case the rule above quoted is controlling."

We refer to the foregoing pronouncements of this court for the purpose of showing that we have recognized this type of modern construction as falling within a class where removal is practically impossible without damage to the building itself and to the real estate on which it is situated.

■■■ We then, in reality, in the first instance have a fact question to determine, and if we follow the trend of the more recent decisions, excerpts from which are set out above, some of which is mere dictum, it would seem that the court was in error in finding that this building could be removed without injury or damage to the building or the premises. However, the evidence in this case is overwhelmingly in support of the trial court's finding in this respect, and while the witnesses admitted that there would be some loss, the great weight of the testimony was to the effect that the pipes could be detached below the floor, the chimney could be cut off and supported, the furnace pipes detached, the burs removed from the bolts which held the box sills to the foundation, and the entire house placed upon skids and removed without any damage to the building. The cost of removing the same would run from $200 to $250, depending upon the distance it was moved. There was evidence to support

the court's finding that the furnace could be taken down and moved and reassembled without any great damage to the same, except the danger from breakage. It is conceded that the foundation wall and cement floor, being of concrete construction, could not be removed and would be practically a total loss as far as attempting to make use of the same for anything other than filling ditches. The evidence shows that the top of the wall could be broken off, the basement filled up and the ground leveled off so that it would be for the purpose of cultivation practically in the condition it was in before the building was erected. The cesspool and the pipes running into the same, of course, would be a total loss, but they were not of expensive construction. The house is not large and is in one compact unit, and insofar as the building itself is concerned, we see no reason why it could not be jacked up and placed on moving apparatus and moved a reasonable distance without any appreciable damage to the building. Two experienced housemovers testified that it could easily be done.

The trial court emphasized, and we think rightly so, that there is a complete set of buildings aside from this building upon this farm, that this building was not a part of, and was not used in connection with the other farm buildings, and the farm would be left in substantially the same condition it was in at the time the same was sold under the contract between Mr. Skinner and Mr. Lasher. Hence, removal of this building would not leave the farm without a full set of farm buildings. Under such circumstances, the house would not enhance the value of the farm, nor would its removal depreciate the value of the farm to the same extent, as would be the case if there were no other dwelling house thereon. Evidence shows it was not occupied at the time of trial. Not many farmers would have need of two dwellings on a 160-acre farm. It is 30 rods from the other farm buildings and would therefore be very inconveniently located for use in connection with the other improvements. The evidence shows that at a cost of not exceeding $15 the electric wiring could be detached from outside the building and left undisturbed. The water pipes, furnace pipes, and sewer pipes could be cut off at the floor line, and their connections through the building itself would not necessarily need to be disturbed. We have, then, the basement, the 50 feet of soil pipe, and the sewer tile, the septic tank and connections therewith, all of

which would be practically a total loss. Some pipe could be saved, but the labor in removing it would be as much as the pipe is worth. In the McSpadden case, supra, there was a basement practically the same size, built out of hollow tile with a cement floor, but there were no water or bathroom fixtures in that building. The evidence in that case showed that the tile could be removed from the foundation wall and would retain about 75 per cent of its original value; while in the instant case the wall would be of no practical value in the construction of another foundation wall.

■■■ The crucial question under the evidence is, was the loss due to waste and destruction of property so great as to warrant this court in reversing the trial court in the exercise of his discretion under the statute, in permitting the building to be removed? Our conclusion is that this case must be judged by the evidence introduced, and cannot be based on the prior pronouncement of this court to the effect that if the building is modern in its construction with gas, water and sewerage fixtures, it necessarily follows that the same may not be ordered removed in the discretion of the court. We are not housemovers, plumbers, or artisans, and can only base our conclusions on testimony of men who are qualified to speak in reference to these matters. This case is very near the borderline and perhaps goes a little farther than we have heretofore gone. Yet we are inclined to support the trial court in his findings. There is not such an abuse of discretion as to warrant us in interfering with the findings and decree in this case. If the trial court and this court, in order to do equity, have gone to what has been termed "heroic lengths" to hold this building removable so as to protect the mechanic's lien holder, justifiable excuse therefor, if excuse is needed, may be found in what appears to the writer to be a strained, illogical and unwarranted construction placed upon the last sentence in what is now paragraph 2 of section 10290 (which is: "In case the premises do not sell for more than sufficient to pay off the prior mortgage or other lien, the proceeds shall be applied on the prior mortgage or other liens."), in holding that this sentence applies to new and independent buildings, thus completely nullifying the explicit and obviously equitable rule provided in paragraph 1 of section 10290 for prorating the sale price in the case of a new building. But such has been the unwavering, consistent construction placed on this

statute, beginning with the case of German Bank v. Schloth, 59 Iowa 316, 13 N. W. 314 (which involved repairs to an existing building), decided in 1882. Three years later in a case (Curtis Bros. & Co. v. Broadwell, 66 Iowa 662, 24 N. W. 265), involving a new building, the court followed the German Bank case, and following these early cases this court has consistently held in a long line of cases that, unless the proceeds of the sale of the entire premises exceeds the amount due the prior lienholder, no apportionment can be made, even when the material furnished or labor performed for which a mechanic's lien is sought to be enforced was in the erection of a new and independent building. For the most recent discussion of this question see Crawford-Fayram Lbr. Co. v. Mann, supra. Perhaps we should recede from this position and hold that this sentence applies only to paragraph 2 of section 10290, and thus extricate ourselves from the suggested dilemma. When this construction was first announced, and up until the chapter on mechanics' liens was amended, revised, and codified by House File 212, Acts of the Extra Session of the 40th General Assembly, sections 10289 and 10290 were in one section (see paragraph 4, section 3095, Code of 1897) and appeared in their present form for the first time in the Code of 1924, and since the legislature has seen fit to separate section 10290 into two paragraphs, there would seem to be justification for now holding this last sentence should only apply to repairs and not to new buildings. However, the Mann case, supra, was handed down in 1927, after the law was changed to its present form, and we are loath to. upset a rule of law that has been consistently adhered to for over fifty years in this state.

Therefore, on the whole record, under the facts as established by the great weight of evidence in this case, we agree with the trial court that the equities are with the plaintiff, and the judgment and decree is accordingly affirmed.—Affirmed.

SAGER, ANDERSON, DONEGAN, STIGER, and RICHARDS, JJ., concur.