QUEAL LUMBER COMPANY, a Corporation, Appellant, v. MAY McNEAL et al., Appellees.

No. 44568.

MARCH 14, 1939.

Hallagan, Fountain, Stewart & Cless, for appellant.

S. B. Allen, for appellees McNeal.

E. S. Tesdell, for appellee Des Moines Building-Loan & Savings Association.

Raymond Hedinger, for appellee Hedinger.

SAGER, J.—These facts were stipulated in the court below:

Plaintiff furnished to May McNeal and her husband certain materials for a dwelling house which they were constructing on the real estate involved herein, this to the value of $503.10, which was the amount due at the time the case was tried; that the first materials were furnished on the 20th day of May, 1936, and the last, on August 12th of the same year, as shown by the sworn statement for mechanic's lien, attached to plaintiff's petition; and that the claim for a lien was filed on December 1st and notice thereof given to the McNeals on December 14th.

It was likewise stipulated that the legal title to the real estate was and is in May McNeal since May 20, 1936, and that she held such title by a deed dated December 17, 1934, and recorded on May 9, 1936; that on the same date, May 9th, there was placed of record a mortgage to the Building & Loan Association, appellee, for $2,900, which bore date of May 7, 1936; that on May 9th there was also filed a mortgage in favor of Susan N. Hedinger for the sum of $600 which was by its terms junior to the mortgage of the Building & Loan Association; and that this Hedinger mortgage was the full purchase price of the real estate and was made pursuant to the terms of a written contract entered into on April 11, 1936.

It was also stipulated that the deed from Susan N. Heding-

er to the McNeals, dated December 17, 1934, as before stated, was in blank as to the grantee until May 9, 1936, and that from December 17, 1934, to April 8, 1936, the said Susan N. Hedinger was the owner. It should be here noted as an undisputed fact that prior to December 17, 1934, one M. J. Hedinger was the titleholder of record, and remained so until the deed in which the name of May McNeal had been inserted, was recorded on May 9, 1936. There is no controversy between the parties as to the amounts involved, and there is presented only a question of priority of liens. The trial court found against the plaintiff and it appeals.

I. Appellant's first contention is that the court should have found for it to the full extent of its claim for the reason that the undisputed evidence shows that "on May 7th and prior to the recordation of either of said mortgages, which occurred on May 9th, the plaintiff furnished material on the property in question, said material being certain window frames made of lumber purchased of plaintiff by defendant McNeal, and that plaintiff at such time had no actual knowledge of the existence of either" of the mortgages held by the defendants.

While plaintiff's sworn statement for a lien fixed May 20th as the date of the first material, it later sought to amend that statement to bring in, as of May 7th, certain creosoted lumber which was claimed went into the construction of the cellar window frames. The decision of the lower court does not indicate why this item was not allowed; but to have done so would have made it appear that the plaintiff had begun furnishing material before the mortgages were recorded, and have demanded a result different from that reached by the trial court. An examination of the abstract, as well as the printed record, persuades us that the court was right in its conclusion.

This material was not furnished in the beginning for this building at all, but had been sold to one Bailey who had it left over on a building job which McNeal was doing for him. Because the lumber was creosoted, plaintiff would not take it back and give Bailey credit for it. Appellant in argument explains this feature of the case in this way:

"However, an arrangement was made between Bailey, Mc-Neal, and plaintiff whereby this material was charged to the defendant McNeal under an arrangement whereby as soon as

it was used by McNeal, it should be charged to the particular job where used. * * *

"McNeal made some cellar frames from this material, and after the mortgages were signed on May 7th, he took these cellar frames to the lot in question where they were left on the premises. * * * McNeal phoned the plaintiff and informed him of the use of this material on the project in question. * * * the price of this material was approximately $7.00. * * * Through error, this item was not included in the itemized statement of account filed in connection with plaintiff's mechanic's lien and possibly was charged in a general account which Mr. McNeal also maintained with the plaintiff."

We hold that the determination of priority of liens cannot be left to such uncertainty as would arise if a lumber dealer or other materialman could, by the method here followed, carry backward the first item of his claim for a mechanic's lien to defeat incumbrances which had theretofore intervened. It would be a strange doctrine that a materialman dealing with a general contractor might import into his claim all the left-overs from other jobs and fix a date to establish a lien against one particular piece of property as was attempted here. The statute, Code section 10271, gives a lien for materials "by virtue of any contract with the owner" for a certain piece of work. It is not a "catch-all" for odds and ends of materials intended for but not used in other construction.

If the course of conduct pursued by appellant in this transaction seems, as here outlined, to be contrary to sound business practice in matters of this kind, this, taken from the transcript, may afford some explanation. We quote from the cross examination of Turner, vice president and managing officer of the plaintiff:

"Q. You considered Mr. McNeal's credit A-1 at that time? A. Mr. E. G. McNeal, we did.

"Q. Sufficient so that you were satisfied by taking a chance on it without looking up the records on it at all? A. That is right."

The foregoing makes it unnecessary to discuss the question of plaintiff's notice, actual or constructive, of the mortgage held by the Building & Loan Association. That mortgage was

of record on May 9th, and the first of the said items of plaintiff's claim was May 20th. As to that mortgage, appellant in division I of his argument only contends that it had no actual knowledge of this mortgage. The statute, Code section 10287, does not require actual notice, nor do we find anything in the authorities cited by appellant which demands it.

II. In the second division of its argument, appellant argues that it had no constructive notice of the Hedinger mortgage, even though it appeared of record, because the acknowledgment thereof was not signed by the notary. We find it unnecessary to analyze the authorities cited to that point, because, as a fact question which the court could find and with which we agree, plaintiff was told by McNeal that he intended giving mortgages for the purchase price. There is some confusion of statement in McNeal's testimony in this regard, but from an examination of the transcript, we are not persuaded that the trial court was wrong in finding constructive notice on this branch of the case.

III. As a third proposition it is argued in behalf of appellant that the lumber company's order has priority over the Hedinger mortgage because the contract between Hedinger and McNeal contemplated that the improvement was to be made by McNeal and that thereby appellee Hedinger authorized and consented thereto, rendering her vendor's lien and second mortgage junior and inferior to plaintiff's mechanic's lien. As supporting this, appellant quotes this from the contract:

"1. All regular taxes on the property due and payable in 1936 are to be paid by seller. Buyer is permitted to mortgage Chau. Park lots for $3,200.00 in a first Mtg. and Va. Hts. in a 1st mtg. for $3,000."

As legal support for its contention, appellant lays stress on Murray v. Kelroy, 223 Iowa 1331, 275 N. W. 21. An examination of that decision discloses that it does not sustain plaintiff's mechanic's lien. In the Murray case, there was what amounted to an express understanding or undertaking that the lumber bills should be taken care of before the vendor be paid.

As another contention, appellant says that because the mortgage actually taken by the Building & Loan Association was $300 less than the permitted amount, it should have priority

for the $300 above the $2,900 for which its mortgage was taken. We are not able to follow this argument.

We see no basis upon which plaintiff may make a claim because the mortgage placed upon the property was not as large as it might have been. On this record we find no error committed against the plaintiff-appellant, and therefore the decree of the trial court as against plaintiff-appellant should be affirmed.

In its decree the court gave the plaintiff a priority for the sum of $177.41. From this part of the trial court's decision the defendant, Building & Loan Association, cross-appeals. It appears that the money originally borrowed from the Building & Loan Association by the McNeals was left in its possession, and when the installments of principal and interest on the mortgage became due, the Building & Loan Association paid itself out of the fund to the extent of this $177.41. We do not know why or how the court reached the conclusion it did, since it had already found and decreed that the mortgage of the Building & Loan Association was prior and superior to the claim of the plaintiff. The record establishes without dispute that the Building & Loan Association disbursed all of the $2,900 which it loaned, except the $177.41 in question, which amount was applied to payments that the McNeals should have made.

It follows that the Building & Loan Association was and is entitled to priority as against the plaintiff to the full amount of its mortgage less the credit made by the application of this $177.41 to the debt. We hold that the court was in error in granting the lumber company priority over the Building & Loan Association mortgage to the extent of $177.41.

It follows that this case is affirmed on appellant's appeal; and modified and remanded on the cross-appeal to the end that the trial court make the correction indicated.—Affirmed on plaintiff's appeal; modified and remanded with instructions on appellee's cross-appeal.

MITCHELL, C. J., and OLIVER, MILLER, BLISS, HALE, HAMILTON, and RICHARDS, JJ., concur.