GENERAL MORTGAGE CORPORATION OF IOWA, appellant, v. THOMAS J. CAMPBELL et al., appellees, OTTUMWA BRICK & TILE COMPANY, intervenor.

No. 51792.

(Reported in 138 N.W.2d 416)

144 

NOVEMBER 16, 1965.

Ries & Osmundson, of Iowa City, for appellant.

Nolan, Lucas & Nolan, of Iowa City, for appellees Johnson County Ready Mix, Iowa Lumber Company, and intervenor, Ottumwa Brick & Tile Company.

STUART, J.— We are asked here to determine whether a real-estate mortgage in excess of the value of the lot described therein, given to secure a construction loan recorded prior to the commencement of any work or the furnishing of any material, has priority over subsequently filed mechanics' liens. We hold such mortgage has priority.

Plaintiff, holder of the real-estate mortgage, brought this action to foreclose. Mortgagors and all materialmen who had filed mechanics' liens were made defendants. All defendants except Iowa Lumber Company and Johnson County Ready Mix defaulted. Ottumwa Brick & Tile Company did not file its mechanic's lien until after the foreclosure action was commenced. It intervened, but for our purposes here it will be referred to as a defendant. The trial court interpreted the mechanic's lien statutes as awarding priority to the mechanics' lienholders. The mortgagee has appealed.

Two houses on two separate lots are involved. Although the dates and amounts vary, the essential factors are identical. The facts will be stated broadly enough to apply to both. Mr. and Mrs. Campbell are the owners of the lots. Mr. Campbell is in the contracting business and built both houses. Prior to the commencement of any work, they arranged to borrow money from plaintiff for part of the purchase price of the lots and the construction of homes thereon. The amount of the loans were more than four times the value of the vacant lots on which the mortgages were given. The mortgages were duly recorded.

Later, defendants furnished materials to Campbell on open

account which were actually used in the construction of the homes. The loan proceeds were disbursed through the attorney for plaintiff. A portion was used for partial payment on the lots. Some went to materialmen for which mechanic's lien waivers were received, but the largest disbursements went to Mr. Campbell directly. These disbursements to him were made before the ninety-day period for filing mechanics' liens had expired. Defendants did not file their liens until long after the ninety-day period.

I. Priority as between this mortgagee and the mechanics' lienholders must be determined by a consideration of the following sections of the 1962 Code of Iowa:

"572.18 Mechanics' liens shall be preferred to all other liens which may attach to or upon any building or improvement and to the land upon which it is situated, except liens of record prior to the time of the original commencement of the work or improvements, * * *."

"572.20 Mechanics' liens, including those for additions, repairs, and betterments, shall attach to the building or improvement for which the material or labor was furnished or done, in preference to any prior lien, encumbrance, or mortgage upon the land upon which such building or improvement was erected or situated."

"572.21 In the foreclosure of a mechanic's lien when there is a prior lien, encumbrance, or mortgage upon the land the following regulations shall govern:

"1. Lien on original and independent building or improvement. If such material was furnished or labor performed in the construction of an original and independent building or improvement commenced after the attaching or execution of such prior lien, encumbrance, or mortgage, the court may, in its discretion, order such building or improvement to be sold separately under execution, and the purchaser may remove the same in such reasonable time as the court may fix. If the court shall find that such building or improvement should not be sold separately, it shall take an account of and ascertain the separate values of the land, and the building or improvement, and order the whole sold, and distribute the proceeds of such sale so as to secure to the

prior lien, encumbrance, or mortgage priority upon the land, and to the mechanic's lien priority upon the building or improvement.

"2. Lien on existing building or improvement for repairs or additions. If the material furnished or labor performed was for additions, repairs, or betterments upon any building or improvement, the court shall take an accounting of the values before such material was furnished or labor performed, and the enhanced value caused by such additions, repairs, or betterments; and upon the sale of the premises, distribute the proceeds of such sale so as to secure to the prior mortgagee or lienholder priority upon the land and improvements as they existed prior to the attaching of the mechanic's lien, and to the mechanic's lienholder priority upon the enhanced value caused by such additions, repairs, or betterments. In case the premises do not sell for more than sufficient to pay off the prior mortgage or other lien, the proceeds shall be applied on the prior mortgage or other liens."

In spite of frequent comments by this court on the confusing and conflicting language of these sections, they have, with one exception, hereinafter discussed, remained in substantially the same form since their enactment in 1876 by the Sixteenth General Assembly. The courts have consistently interpreted these sections, albeit occasionally with reluctance, to grant priority to the prior lien when the premises are sold as a unit and the proceeds are insufficient to pay off the prior liens. German Bank v. Schloth (1882), 59 Iowa 316, 13 N.W. 314; Curtis Bros. & Co. v. Broadwell (1885), 66 Iowa 662, 24 N.W. 265; Kiene v. Hodge (1894), 90 Iowa 212, 57 N.W. 717; Leach v. Minick (1898), 106 Iowa 437, 76 N.W. 751; Fletcher v. Kelly (1893), 88 Iowa 475, 55 N.W. 474, 21 L. R. A. 347; Green v. Saxton (1923), 196 Iowa 1086, 196 N.W. 27; Marker v. Davis (1925), 200 Iowa 446, 204 N.W. 287; Crawford-Fayram Lumber Co. v. Mann (1927), 203 Iowa 748, 211 N.W. 225; Taber Lumber Co. v. Converse (1924), 197 Iowa 1287, 198 N.W. 519; Magnesite Products Co. v. Bensmiller (1929), 207 Iowa 1303, 224 N.W. 514; Knapp v. Baldwin (1931), 213 Iowa 24, 238 N.W. 542; First State Bank v. Westendorf (1931), 213 Iowa 475, 239 N.W. 73; Darragh v. Knolk (1934), 218 Iowa 686, 254 N.W. 22;

Anfinson v. Cook (1938), 224 Iowa 833, 276 N.W. 762; Queal Lumber Co. v. McNeal (1939), 226 Iowa 631, 284 N.W. 479; Queal Lumber Co. v. McNeal (1939), 226 Iowa 637, 284 N.W. 482; Society Linnea v. Wilbois (1962), 253 Iowa 953, 113 N.W. 2d 603.

The language most frequently considered controlling in the cited cases is the last sentence of the quote set forth above: "In case the premises do not sell for more than sufficient to pay off the prior mortgage or other lien, the proceeds shall be applied on the prior mortgage or other liens."

Three distinctive features of the instant case limit the number of cases which are directly in point. (1) This case involves a construction loan in which the lender loaned a sum of money known to be greatly in excess of the value of the vacant lots described in the mortgage with the expectation that the mortgagor would use the funds to construct improvements thereon. (2) The improvements were original and independent buildings, not additions or repairs to existing buildings. (3) It was stipulated they were not removable and should be sold as part of the real estate.

The first opportunity we had to consider the statutes enacted in 1876 was in German Bank v. Schloth (1882), 59 Iowa 316, 324, 13 N.W. 314. This case involved the priority of liens for improvements on an existing building. The court specifically considered the language of the last sentence of what is now Code section 572.21(2). We said:

"Counsel for Graves argue that such a construction should be put upon the whole section, that upon a sale of the property, whatever sum may be realized, an accounting shall be had as to the enhanced value caused by the additions, and as to the value of the property before they were made, and the materialman shall have a prior lien upon the amount thus ascertained as to the enhanced value covered by the additions, and the mortgagee, or other prior lienholder, shall have a prior lien upon the amount of the value of the property before the additions. But this construction is in conflict with the plain language of the provision above quoted. Counsel's arguments are based upon the justice of the construction, and the fact that it seems to be in accord

with other provisions of the section. This may all be. The plain language we have quoted must be regarded as a limitation upon the language preceding it in the same section, to the effect that if the premises do not sell for more than enough to pay off the prior mortgage or other lien, the accounting and distribution of proceeds of sale shall not be required. In this view it is not in conflict with any other words of the statute. We must enforce the provision as it reads and cannot wrest its meaning on the ground that another construction would be more equitable, and would not be in conflict with other provisions of the same statute. It must be admitted that par. 4, section 2135, is obscure and capable of adverse construction. The interpretation we adopt gives more nearly full effect to all its language, *ut res magis valeat quam pereat*. It also gives the language quoted the force of a proviso which has effect without being directly contrary to the purview of the statute, though limiting its application. This is the office of a proviso. A different interpretation would wholly nullify the language under consideration."

In Curtis Bros. & Co. v. Broadwell (1885), 66 Iowa 662, 664, 24 N.W. 265, we applied the rule announced in German Bank to new construction saying:

"It cannot be doubted that, if this section does not stand in the way, a prior mortgage will prevail against a subsequent mechanic's lien for buildings or improvements which become a part of the realty. Under the plain language of the section, it is obvious that the same rule applies alike to improvements, betterments or additions to buildings, and to new and independent structures. It cannot be questioned that the building for which the materials were furnished by plaintiffs did become a part of the real estate. They are therefore subject to the mechanic's lien, under the rule of German Bank v. Schloth."

These cases were followed consistently in many decisions including Kiene v. Hodge (1894), 90 Iowa 212, 57 N.W. 717; Leach v. Minick (1898), 106 Iowa 437, 76 N.W. 751, and Marker v. Davis (1925), 200 Iowa 446, 204 N.W. 287.

■■ Appellees concede this was the rule until the Extra Session of the Fortieth General Assembly in which the Code Revision of 1924 was enacted. Prior to the Code of 1924 the

language of sections 572.20 and 572.21 was contained in one subsection. The identical language was reenacted but was divided into its present form. It is appellees' contention the placement of the provisions relating to new construction in a separate subparagraph from the provisions dealing with additions and repairs has the effect of making the troublesome last sentence apply only to additions and repairs because it appears only in that subsection. We disagree with appellees' contention for three reasons. (1) "Compilation and codification are not legislation. The intention to accomplish a change in the meaning and effect of a statute by a revision must be clear and unmistakable." Concurring opinion in Jones v. Mills County, 224 Iowa 1375, 1386, 279 N.W. 96. (2) The legislature has acquiesced in a contrary construction for 40 years. (3) The equities are not so strong in favor of appellees they demand a change in settled law.

II. A contention similar to the one urged upon us here was made in Jones v. Mills County, supra. In this case, which also involved the 1924 Code revision, we said on pages 1379, 1380:

"While the law as it now appears in a separate section (6962) might be so understood, upon investigation it will be found that sections 6960, 6961, and 6962 were originally all in one section bearing the title 'Unknown or Deceased Owners', (see section 1353, Code 1897) and this meaning is traceable in all the corresponding sections back to section 461, Code 1851. The law was separated into three distinct sections by the editors of the Code of 1924, but there is nothing to indicate that the legislature intended to change the meaning which this court had for many years applied to this provision of the statute.

"In the case of Dennis v. School District, 166 Iowa 744, at page 750, 148 N.W. 1007, 1009, this court said: 'It is a rule of construction that changes made by a revision of the statutes will not be construed as altering the law, unless it is clear that such was the intention, and, if the revised statute is ambiguous or susceptible of two constructions, reference may be had to prior statutes for the purpose of ascertaining the intent of the legislature.'

"See, also, In re Will of Evans, 193 Iowa 1240, 1244, 188 N.W. 774; Eastwood v. Crane, 125 Iowa 707, 101 N.W. 481. The

law in this state with reference to the construction of statutes that have been changed or divided into different sections by the code commissioners is in accordance with the general rule as stated in section 494, 59 C. J., page 897, as follows: 'Change in arrangement. In codifying or revising statutes, a mere rearrangement of the sections or parts of a statute or the placing of portions of what was originally a single section in separate sections does not change the purpose, operation, and effect thereof unless an intention to do so already appears.' "

See also: State v. Oge, 227 Iowa 1094, 1098, 290 N.W. 1; Benschoter v. Hakes, 232 Iowa 1354, 1358, 8 N.W.2d 481.

Here, there is nothing but the editorial division to indicate legislative intent. This is not sufficient to clearly show the legislature intended, by this procedure, to make such a fundamental change in the law which had existed for 50 years.

■ III. There is force and logic in the statutory interpretation urged upon us by appellees. Had there been such painstaking research in Anfinson v. Cook (1938), 224 Iowa 833, 276 N.W. 762, we might have had a different line of authorities to review. There, we went to "heroic lengths" to hold a building removable and referred to the previous construction of the statutes as "strained, illogical and unwarranted" but recognized such construction to be "unwavering and consistent". (Page 839) We said: "Perhaps we should recede from this position and hold that this sentence applies only to paragraph 2 of section 10290, and thus extricate ourselves from the suggested dilemma. When this construction was first announced, and up until the chapter on mechanics' liens was amended, revised, and codified by House File 212, Acts of the Extra Session of the 40th General Assembly, sections 10289 and 10290 were in one section (see paragraph 4, section 3095, Code of 1897) and appeared in their present form for the first time in the Code of 1924, and since the legislature has seen fit to separate section 10290 into two paragraphs, there would seem to be justification for now holding this last sentence should only apply to repairs and not to new buildings. However, the Mann case, supra, was handed down in 1927, after the law was changed to its present form, and we are loath to upset a rule of law that has been consistently adhered to for over fifty years in this state." (Page 840)

Appellees point out correctly that Crawford-Fayram Lumber Co. v. Mann (1927), 203 Iowa 748, 751, 211 N.W. 225, did not consider the 1924 changes. We there said: "The statute in force at the time of the rendition of this opinion [Kiene v. Hodge, supra] was Chapter 100 of the Acts of the Sixteenth General Assembly, which did not differ materially from Section 3095, Code of 1897, which governs the case before us."

Even though the authority upon which the Anfinson decision is based was misconstrued, the cases cited in Division I show we have consistently awarded priority to the prior lienholder. The legislature has had forty years and twenty regular sessions to change these frequently castigated sections of the Code, but has not seen fit to do so. The Uniform Commercial Code enacted by the Sixty-first General Assembly makes no changes in the mechanic's lien law as it relates to real estate. It cannot be said the legislature is dissatisfied with the interpretation placed on these sections by this court.

"Where a particular interpretation has been placed on a statute by the court, and the legislature at its subsequent meetings has left the statute materially unchanged, it is presumed that the legislature has acquiesced in that interpretation." 82 C. J. S. 549, Statutes, section 316. It has been held failure to amend a statute for twenty years raises a strong presumption of legislative satisfaction with the interpretation given it by the courts. Ex parte Rogers, 56 Idaho 521, 57 P.2d 342.

In the face of this inaction by the legislature in such an important and active field of law, we are reluctant to change an interpretation with which the construction industry, the financial institutions and their legal advisors have lived for nearly ninety years.

"It is of greatest importance that the law should be settled. Fairness to the trial courts, to the legal profession, and above all to the citizens generally demands that interpretations once made should be overturned only for the most cogent reasons. The law should be progressive; it should advance with changing conditions. But this does not mean that its forward progress should be over the dead bodies of slain and discarded precedents. Legal authority must be respected; not because it is venerable with

age, but because it is important that courts, and lawyers and their clients may know what the law is and order their affairs accordingly." Stuart v. Pilgrim, 247 Iowa 709, 714, 74 N.W.2d 212.

IV. We do not believe "cogent reasons" found by the court in the Pilgrim case to require a change in statutory interpretation are present here. Support for the present interpretation can be found in the conflicting and confusing provisions of the statute. This is an area in which it is more important that the settled law remain settled than that our interpretation be changed to one which may, in some instances, be more equitable.

Equities which might favor a mechanic's lienholder whose work or material has enhanced the value of the security of a prior lienholder are not present in a construction loan. There is no inequitable windfall of increased security here because the loan was made with the expectation that the proceeds would be used to construct the improvement. The mortgagee was counting on the improvement to provide adequate security for the loan.

The prior lien must, of course, be recorded before it takes priority. A laborer or a supplier can protect himself by examining the records before furnishing labor or material on the project in question and by making satisfactory arrangements for payment. This results in no greater inequity than is likely to occur under any of our statutes in which a person is charged with notice of transactions properly recorded.

Appellees argue the mortgagee is in effect a trustee of the loan proceeds of a construction loan for the benefit of the materialmen and its conduct in paying the loan proceeds to the mortgagor directly was so inequitable the lienholders should prevail regardless of the statutory interpretation. We do not agree. Mortgagee's duties to the public were discharged when it complied with the recording statutes. It is not required to disburse the funds in any particular manner. This is not to say materialmen could not by taking appropriate action place the mortgagee in the position of a trustee. A trustee relationship, however, does not automatically grow out of a construction loan.

There is no showing these lienholders relied on the funds in the hands of the mortgagee or their mechanics' liens. Failure to

file the liens until long after the 90-day period had expired, and in one instance until after the foreclosure was commenced, indicates they were relying on Campbell's credit rather than any lien rights they might have had.

V. Of the nine cases cited by appellee in which priority was accorded the mechanic's lien, four involved independent buildings which were determined to be removable. Tower v. Moore (1898), 104 Iowa 345, 73 N.W. 823; Lincoln National Life Ins. Co. v. McSpadden (1930), 211 Iowa 97, 232 N.W. 824; Spieker v. Cass County Fair Association (1933), 216 Iowa 424, 249 N.W. 415; Anfinson v. Cook (1938), 224 Iowa 833, 276 N.W. 762. Three granted priority of mechanic's lien over a vendor's or lessor's lien on the theory that the original agreement contemplated the improvement. Kimball Brothers Co. v. Fehleisen (1918), 184 Iowa 1109, 169 N.W. 445; Veale Lumber Co. v. Brown (1924), 197 Iowa 240, 195 N.W. 248; Denniston & Partridge Co. v. Romp (1953), 244 Iowa 204, 56 N.W.2d 601. One, Des Moines Furnace & Stove Repair Co. v. Lemon (1953), 244 Iowa 316, 56 N.W.2d 923, was not in point. In Iowa Mortgage Co. v. Shanquest (1886), 70 Iowa 124, 29 N.W. 820, part of the lumber was furnished prior to the recording of the mortgage. It was held to have been delivered under one contract and awarded priority. There was no appearance by the mortgagee on appeal and there was no discussion of the statutes. None of the cases involved the factual situation present here.

For the reasons hereinabove set forth, this case is hereby reversed and remanded to the trial court for judgment in accordance herewith.—Reversed and remanded.

All JUSTICES concur.